David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MARIA LINGAT-COLLIER,<br><br>                Plaintiff,<br><br>   v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES LLC; AND TRANS UNION, LLC,<br><br>                Defendants. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending,*

*Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2.      This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

**PARTIES**

4.      Plaintiff Maria Lingat-Collier ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.      Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Experian is doing business in Nevada, with a principal place of business in Ohio.

6.      Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that

term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

7.  Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Trans Union is doing business in Nevada.

8.  Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

**FACTUAL ALLEGATIONS**

**VIOLATION OF THE FCRA - EXPERIAN**

***Introduction***

9.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

3

10. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

*Plaintiff's bankruptcy filing and Experian's policy of following industry guidelines*

11. On or about 10/17/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-29574-abl (the "Chapter 13" or "Bankruptcy"). BK ECF No. 1.

12. On her bankruptcy Schedule D, Plaintiff included her mortgage obligation to Countrywide, secured by a first deed of trust, which Bank of America ("BANA") later assumed.

13. On 8/20/2015, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order"). BK ECF No. 104. Pursuant to its terms, Plaintiff provided for ongoing payments on account of the mortgage obligation.

14. On 4/21/16, Plaintiff obtained an Order of Discharge on her Bankruptcy case. BK ECF No. 133.

15. However, Experian either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein. Experian's inaccurate reporting ultimately did not comply with the Consumer Data Industry Association's Metro 2 reporting standards,

4

which provides guidance for credit reporting and FCRA compliance. Court rely on such guidance to establish furnisher liability,[1] and Experian's representatives have declared that "Experian's policy for the reporting of data follows the guidelines of the Credit Reporting Resource Guide ("Guide"), published by the Consumer Data Industry Association ("CDIA"), including the reporting of accounts included in bankruptcy."[2]

16.     On information and belief, Experian adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

17.     Despite the Metro 2 Format's instructions, Experian failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy, and thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

18.     To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only patently incorrect, but also materially misleading under the CDIA's standards as well.

19.     A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data.[3]

---

[1] *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation 'Discharged in bankruptcy' and with a zero balance due").

[2] *See Dixon v. Experian Information Solutions, Inc.*, No. 13-cv-227-PPS-PRC, 2014 WL 2881589, at *5 (N.D. Ind. June 25, 2014); *Dixon*, ECF Dkt. 42-2, Declaration of Kimberly Hughes, at ¶ 17.

[3] *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

20.     Additionally, reporting and rereporting patently incorrect and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

*Experian failed to conduct a proper reinvestigation under the FCRA*

21.     Plaintiff obtained a consumer report from Experian, dated April 28, 2017, Report No. 3373-1106-15 ("Experian Report").  The Experian Report included reporting of a Bank of America mortgage partial account # 11138 ("BANA Account").

22.     The Experian Report suppressed positive data that BANA was otherwise furnishing to Experian, thereby depriving Plaintiff of positive credit data that would have provided Plaintiff a true "fresh start" after filing Bankruptcy.  However, Experian failed to report Plaintiff's timely mortgage payments, even though BANA was reporting them to Experian.

23.     This failure caused Plaintiff's Experian Report to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to BANA.

24.     Specifically, BANA furnished positive credit data to Experian stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from December 2014 through January 2016 and May 2016 through September 2016 (the "Suppressed Positive Data").

25.     However, Experian failed to include the Suppressed Positive Data on the Experian Report.  Instead, Experian stated no payment data was available for display on the "Payment History" segment of the BANA tradeline for the months of June 2010 through August 2016.  But this was directly contrary to the "Account History" segment of the

6

tradeline, which reported timely payments and a declining account balance for the period May 2015 through July 2016.

26.     Upon information and belief, the Payment History segment has a significant overall impact on the various consumer reporting products that Experian offers credit decision makers.

27.     The Payment History reporting was patently incorrect because it did not reflect Plaintiff's actual payment performance from December 2014 through January 2016 and May 2016 through September 2016.  Instead, it reflected no performance whatsoever.

28.     This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to BANA from December 2014 through January 2016 and May 2016 through September 2016.

29.     Accordingly, on or about May 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

30.     Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Second Experian Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

31.     Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BANA to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI Response") to BANA.

32.     In relevant part, the Second Experian Dispute Letter stated:

> Attached is a copy of my driver's license and other documentation to prove my identity.  Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and

attached documents, I have a mortgage account with BANK OF AMERICA, N.A. (**Account No.** ****2876) and you are not reporting complete information about this account. Specifically, I obtained information from BANK OF AMERICA, N.A. in which BANK OF AMERICA, N.A. provided proof (attached) it furnished to you that I was "current" with my payments from December 2014 through January 2016; and May 2016 through September 2016. Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account. Accordingly, please stop suppressing this information. Your failure to report this data is lowering my credit score.

Please make these corrections immediately and send me a copy of the corrected consumer credit report.

33. Indeed, the RFI Response clearly laid out the Suppressed Positive Data that Experian failed to include in Plaintiff's Credit File and included the proof from BANA that BANA had reported the Suppressed Positive Data to Experian for these months.

34. After receiving the Experian Dispute Letter, Experian was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

35. On or about May 31, 2017, Plaintiff received notification from Experian through its "reinvestigation" that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6). However, Experian failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BANA's updated tradeline. Although Experian stated in its response that the BANA tradeline had been updated, upon information and belief, the BANA tradeline remained identical to original reinvestigation results. The "Status" even still specifically stated that the BANA tradeline had been updated in "Apr 2017," which was prior to Plaintiff's Second Experian Dispute Letter.

36.     A reasonable investigation by Experian would have updated Plaintiff's BANA account to include the Suppressed Positive Data.

37.     Upon information and belief, Experian failed to notify BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Experian failed to do so because it didn't believe it was necessary.

38.     Upon information and belief, Experian failed to provide BANA with a notice regarding Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(5)(A) regarding Plaintiff's dispute, and failed to do so because it didn't believe it was necessary.

39.     Upon information and belief, Experian failed to provide all relevant information, including BANA's confirmation of the Suppressed Positive Data to BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Experian failed to do so because it didn't believe it was necessary.

40.     Had Experian completed an investigation and inquired with BANA, Experian would have learned that it was wrongfully suppressing positive account history about Plaintiff.

41.     Experian therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

42.     Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. § 1681i.

43.     Experian re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File.  Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File.  Indeed, the Suppressed Positive Data

for December 2014 through January 2016 and May 2016 through September 2016 remained suppressed, negatively impacting Plaintiff's credit score and credit worthiness.

44.     As confirmed by BANA, Experian should have reported the account as "current" from December 2014 through January 2016 and May 2016 through September 2016.

45.     Experian should not have suppressed or deleted the "current" account history from December 2014 through January 2016 and May 2016 through September 2016.

46.     Experian, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. §1681i(a).

47.     A reasonable reinvestigation would have resulting in Experian reviewing the documents provided by Plaintiff and a review of Experian's own records.

48.     Furthermore, Experian violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the BANA tradeline.  Experian's violation perfected when it rereported the disputed BANA information on its notice to Plaintiff of the results of its reinvestigation.

49.     Experian's violation of section 1681e(b) also perfected when the suppressed BANA information appeared on the face of a Credit Plus Inc consumer report dated November 8, 2017, which Plaintiff obtained in connection with her efforts to secure mortgage financing.  A true and correct copy of the Credit Plus Report is attached hereto as **Exhibit 1 at 3.**

50.     Experian further violated 15 U.S.C. § 1681g.  Under section 1681g, Experian was required to disclose to Plaintiff all information in Plaintiff's consumer file.  By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Experian violated 15 U.S.C. § 1681g.

51.   Experian also violated 15 U.S.C. § 1681e when it failed to maintain reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.  Experian failed to review Plaintiff's dispute letter, verify Plaintiff's dispute with BANA or update or correct Plaintiff's BANA account <u>even though BANA was reporting these months that Plaintiff was "current."</u>  Experian chose to ignore BANA's reporting and Plaintiff's dispute letter, including proof that BANA was reporting the account as "current."  Thus, Experian willfully violated 15 U.S.C. § 1681e.

52.   Plaintiff's efforts to correct Experian's incomplete and inaccurate reporting were fruitless resulting in this lawsuit.  Indeed, Experian was provided the evidence of its illegal suppression and willfully failed to make the requested corrections to Plaintiff's Credit File.

53.   Experian's continued incomplete and inaccurate reporting of the Suppressed Positive Data in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages.

54.   Also as a result of Experian's continued incomplete and inaccurate reporting of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation issues related to credit denials, out-of-pocket expenses in challenging Experian's wrongful omissions, and damage to Plaintiff's creditworthiness.

55.   By reporting incomplete and inaccurate account information relating to BANA's Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

56.   Plaintiff has been required to retain counsel to prosecute this action based on Experian's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

## VIOLATION OF THE FCRA – EQUIFAX

### *Equifax's Suppression of Positive Data Created an Incomplete Report*

57.   On or about August 19, 2016, Plaintiff obtained a consumer report from Equifax (the "Equifax Report").

58.   The Equifax Report "suppressed" positive data being furnished from BANA thereby depriving Plaintiff of positive credit data that would have provided Plaintiff a true "fresh start" after filing Bankruptcy. Equifax alternatively failed to report timely mortgage payments on the Property reported by BANA.

59.   This failure caused the Equifax Report to include materially misleading omissions, which created misperceptions about Plaintiff's timely monthly payments to BANA.

60.   Specifically, BANA furnished positive credit data to Equifax stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from December 2014 through January 2016 and May 2016 through September 2016 (the "Suppressed Positive Data").

61.   However, Equifax failed to include the Suppressed Positive Data in Plaintiff's Credit File for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016.  Instead, Equifax left the payment history blank for these months.

62.   This failure was patently incorrect because it did not reflect Plaintiff's actual payment performance for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016.  Instead, it reflected no performance whatsoever.

63.     This failure was also materially misleading because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to BANA for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016. It was also materially misleading because BANA reported that Plaintiff paid off the account in October 2016, but this was not reflected anywhere on the face of the Credit File.

64.     Accordingly, on or about May 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

65.     Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

66.     Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BANA to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R. § 1024.36 (the "RFI Response") to BANA.

67.     In relevant part, the Equifax Dispute Letter stated:

> Attached is a copy of my driver's license and other documentation to prove my identity.  Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and attached documents, I have a mortgage account with BANK OF AMERICA, N.A. (**Account No.** ****2876) and you are not reporting complete information about this account.  Specifically, I obtained information from BANK OF AMERICA, N.A. in which BANK OF AMERICA, N.A. provided proof (attached) it furnished to you that I was "current" with my payments from December 2014 through January 2016; and May 2016 through September 2016.  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.
>
> You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please

stop suppressing this information.  Your failure to report this data is lowering my credit score.

Please make these corrections immediately and send me a copy of the corrected consumer credit report.

68. Indeed, the RFI Response clearly laid out the Suppressed Positive Data that Equifax failed to include in Plaintiff's Credit File and included the proof from BANA that BANA had reported the Suppressed Positive Data to Equifax for these months.

69. After receiving the Equifax Dispute Letter, Equifax was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

70. On or about June 10, 2017, Plaintiff received notification from Equifax through its "reinvestigation" that Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).  However, Equifax failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BANA's updated tradeline.

71. A reasonable investigation by Equifax would have updated Plaintiff's BANA account to include the Suppressed Positive Data.

72. On information and belief, Equifax failed to notify BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Equifax failed to do so because it didn't believe it was necessary.

73. Alternatively, upon information and belief, even if Equifax did notify BANA of Plaintiff's dispute, Equifax failed to update Plaintiff's Credit File consistent with BANA's reporting on reinvestigation.

74.     On information and belief, Equifax failed to provide BANA with a notice regarding Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(5)(A) regarding Plaintiff's dispute, and failed to do so because it didn't believe it was necessary.

75.     Upon information and belief, Equifax failed to provide all relevant information, including BANA's confirmation of the Suppressed Positive Data to BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Equifax failed to do so because it didn't believe it was necessary.

76.     Had Equifax conducted a reasonable reinvestigation and inquired with BANA, Equifax would have learned that it was wrongfully suppressing positive account history about Plaintiff, and updated the information accordingly.

77.     Because Equifax failed to do so, it therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Credit File.

78.     Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681i.

79.     Equifax re-reported the inaccurate, incomplete and misleading information on Plaintiff's Credit File.  Specifically, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File.  Indeed, the Suppressed Positive Data for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016 remained suppressed, as does the notation that Plaintiff paid off the account on October 10, 2016, therefore negatively impacting Plaintiff's credit score and credit worthiness.

80. As confirmed by BANA, Equifax should have reported the account as "current" for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016.

81. Equifax should not have suppressed or deleted the "current" account history for the months of March 2015, August 2015, January 2016, and May 2016 through September 2016.

82. Equifax should have reported the account as paid off on October 2016, rather than merely included in bankruptcy.

83. Equifax, therefore, upon receipt of Plaintiff's dispute, failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a).

84. A reasonable reinvestigation would have resulting in Equifax reviewing the documents provided by Plaintiff and a review of Equifax's own records.

85. Furthermore, Equifax violated 15 U.S.C. § 1681e(b) when it failed to follow procedures to assure the maximum possible accuracy of the BANA tradeline. Equifax's violation perfected when it rereported the disputed BANA information on its notice to Plaintiff of the results of its reinvestigation.

86. Equifax further violated 15 U.S.C. § 1681g. Under section 1681g, Equifax was required to disclose to Plaintiff all information in Plaintiff's consumer file. By omitting the Suppressed Positive Data (in Plaintiff's consumer file), Equifax violated 15 U.S.C. § 1681g.

87. Equifax also violated 15 U.S.C. § 1681e(b) when it failed to maintain reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. Equifax failed to review Plaintiff's dispute

letter, verify Plaintiff's dispute with BANA or update or correct Plaintiff's BANA account <u>even though BANA was reporting each month that Plaintiff was "current."</u> Equifax chose to ignore BANA's reporting and Plaintiff's dispute letter, including proof that BANA was reporting the account as "current."  Thus, Equifax willfully violated 15 U.S.C. § 1681e(b).

88.   Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless resulting in this lawsuit.  Indeed, Equifax was provided the evidence of its incomplete reporting and willfully failed to make the requested corrections to Plaintiff's Credit File.

89.   Equifax's continued incomplete and inaccurate reporting of the Suppressed Positive Data in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages.

90.   Also as a result of Equifax's continued incomplete and inaccurate reporting of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation issues related to credit denials, out-of-pocket expenses in challenging Equifax's wrongful omissions, and damage to Plaintiff's creditworthiness.

91.   By reporting incomplete and inaccurate account information relating to BANA's Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b).

92.   Plaintiff has been required to retain counsel to prosecute this action based on Equifax's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

**VIOLATION OF THE FCRA – TRANS UNION**

***Trans Union's Suppression of Positive Data Created an Incomplete Report***

93. On or about July 26, 2016, Plaintiff obtained a consumer file from Trans Union (the "Credit File").

94. Plaintiff discovered that Trans Union was apparently intentionally suppressing positive account history rereporting from her consumer file at Trans Union, thereby depriving Plaintiff of positive credit data that would have provided Plaintiff a true "fresh start" after filing Bankruptcy.

95. Specifically, on May 2, 2017, BANA confirmed to Plaintiff that BANA had been reporting <u>each month</u> to Trans Union that Plaintiff was "current" from December 2014 through January 2016 and May 2016 through September 2016 (the "Suppressed Positive Data").

96. But, on Plaintiff's TU Consumer Disclosure, Trans Union failed to rereport the "current" notations that BANA had been reporting to Trans Union.  On information and belief, based on its internal policies and procedures, Trans Union was suppressing this information intentionally.

97. This failure was patently incorrect because it did not reflect Plaintiff's actual payment performance from December 2014 through January 2016 and May 2016 through September 2016.   Instead, it reflected no performance whatsoever.

98. This failure was also materially misleading, because these omissions created misperceptions about Plaintiff's *actually* timely monthly payments to BANA from December 2014 through January 2016 and May 2016 through September 2016.

99. Specifically, BANA furnished positive payment history reporting to Trans Union stating that Plaintiff's account was "current" with all ongoing monthly payment obligations from December 2014 through January 2016 and May 2016 through September 2016.

100.    Accordingly, on May12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Trans Union's incomplete reporting by notifying Trans Union, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Credit File.

101.    Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union (the "Trans Union Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Suppressed Positive Data.

102.    Plaintiff included proof of the Suppressed Positive Data, which was provided directly by BANA to Plaintiff.

103.    In relevant part, the Trans Union Dispute Letter stated:

>    Attached is a copy of my driver's license and other documentation to prove my identity.   Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and attached documents, I have a mortgage account with BANK OF AMERICA, N.A. (**Account No.** ****2876) and you are not reporting complete information about this account.  Specifically, I obtained information from BANK OF AMERICA, N.A. in which BANK OF AMERICA, N.A. provided proof (attached) it furnished to you that I was "current" with my payments from December 2014 through January 2016; and May 2016 through September 2016.  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.
>    .
>
>    You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.
>
>    Please make these corrections immediately and send me a copy of the corrected consumer credit report.

104.    Indeed, Plaintiff clearly laid out the Suppressed Positive Data which Trans Union failed to include in Plaintiff's Credit File and included the proof from BANA that BANA had reported the Suppressed Positive Data to Trans Union every month.

105. After receiving the Trans Union Dispute Letter, Trans Union was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

106. Pursuant to 15 U.S.C. § 1681i(a)(2), Trans Union was required to notify BANA regarding Plaintiff's dispute.

107. Pursuant to 15 U.S.C. § 1681i(a)(2), Trans Union was required to provide all relevant information to BANA regarding Plaintiff's dispute.

108. On or about May 25, 2017, Trans Union printed and mailed a letter regarding "Dispute Status" to Plaintiff of the results of its reinvestigation, pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(6)(B).

109. Upon information and belief, Trans Union failed to correct Plaintiff's Credit File to include the Suppressed Positive Data in BANA's updated tradeline.  Rather, Trans Union appears to have deleted the BANA tradeline, as the reinvestigation letter did not include a tradeline for BANA, and instead it merely stated: "Based on the information provided to TransUnion, our records show that the information you disputed does not currently appear on your TransUnion credit report."

110. On information and belief, as a matter of its internal policies and procedures regarding tradelines included in bankruptcy, Trans Union simply suppressed, rather than deleted the BANA tradeline and thereby deprived Plaintiff of the benefit of the Suppressed Positive Data.

111. However, in a Credit Plus Inc., merged consumer report for Plaintiff, dated November 8, 2017, Trans Union reported the BANA Account, excluding any indication of the fact of Plaintiff's positive Payment History, or that it was closed, never late.  Thus, Trans Union

mislead plaintiff into believing that it actually deleted the account, when in fact it continued reporting it, in its disputed form, to third-parties. Ex. 1 at 3.

112. Section 1681i(a)(6)(B)(ii) requires that the form of Trans Union's notices to consumers of the results of its reinvestigations must be provided in the form of a "consumer report." Trans Union rereported the disputed Suppressed Positive Data.

113. The Suppressed Positive Data was patently incorrect and materially misleading for the reasons discussed above.

114. Because Trans Union continued rereporting the Positive Suppressed Data on the face of its notice to Plaintiff of the results of its reinvestigation, and because that notice is a consumer report, Trans Union rereported inaccurate information on the face of a consumer report, following its reinvestigation of the accuracy that very same inaccurate information.

115. Upon information and belief, had Trans Union included the un-Suppressed Positive Data as a basis for any calculation of Plaintiff's credit score that Trans Union provides to its subscribers, the inclusion of this positive information would substantially increase the positive rating associated with any such credit score product.

116. Upon information and belief, Trans Union failed to notify BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Trans Union failed to do so because it didn't believe it was necessary.

117. Upon information and belief, Trans Union failed to provide BANA with a notice regarding Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(5)(A) regarding Plaintiff's dispute, and failed to do so because it didn't believe it was necessary.

118. Upon information and belief, Trans Union failed to provide all relevant information, including BANA's confirmation of the Suppressed Positive Data to BANA regarding Plaintiff's dispute, thus violating 15 U.S.C. § 1681i(a)(2); Trans Union failed to do so because it didn't believe it was necessary.

119. Had Trans Union notified BANA of Plaintiff's dispute, BANA would have confirmed that Trans Union was inaccurately rereporting the BANA tradeline.

120. A reasonable reinvestigation by Trans Union would have resulted in updating Plaintiff's BANA account to include the Suppressed Positive Data.

121. Trans Union therefore failed to conduct a reasonable investigation as required by 15 U.S.C. §1681i(a), and wrongly continued to suppress complete and accurate information in connection with Plaintiff's Credit File.

122. Trans Union failed to review all relevant information that Plaintiff attached to her dispute letter to Trans Union, as otherwise required by and accordingly now in violation of 15 U.S.C. § 1681i(a)(4).

123. Trans Union re-reported patently incorrect and misleading information on Plaintiff's Credit File.  Specifically, Trans Union now suppressed and deleted Plaintiff's BANA account.  Thus, the Suppressed Positive Data continued to remain suppressed and willfully omitted from Plaintiff's Credit File and, furthermore, suppressed additional positive information regarding Plaintiff's timely payments and "current" status.

124. Trans Union, therefore, upon receipt of Plaintiff's dispute, failed to conduct an investigation as required by 15 U.S.C. § 1681i(a).

125. Moreover, rather than delete the BANA tradeline, Trans Union was required to "modify [the] item[s] of information" provided by Plaintiff since the Suppressed Positive Data

was verifiable and Trans Union failed to provide or receive notice from BANA pursuant to 15 U.S.C. §1681i(a)(5)(A)(i)-(ii).

126. However, for its own expediency and business efficiency, rather than obtain corroboration from BANA or have reasonable policies to update the BANA account consistent with Plaintiff's dispute, Trans Union impermissibly suppressed the BANA tradeline without conducting a reasonable investigation.

127. A reasonable reinvestigation would have resulting in Trans Union reviewing the documents provided by Plaintiff and a review of Trans Union's own records.

128. "[A] CRA's § 1681g obligation to provide a consumer's complete file is triggered merely by a 'request.' The statute does not limit the term 'request' in any way and thus the Court will not impose a limitation."   This is because the "[FCRA] is a remedial statute with 'consumer oriented objectives support[ing] a liberal construction' of its terms in favor of the consumer."

129. A CRA complies with section 1681g(a) when in response to a consumer's request for their file, the CRA "clearly and accurately disclose[s] . . . all information" in the consumer's file in response to the consumer's request for that disclosure.

130. "The FCRA defines 'file' when used in connection with information on any consumer, as 'all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored.'"

131. Under section 1681g, Trans Union was required to disclose to Plaintiff all information in Plaintiff's consumer file.   By omitting the Suppressed Positive Data (in Plaintiff's consumer file), and the BANA account that was in Trans Union's file, Trans Union violated 15 U.S.C. § 1681g.

132. While Congress has not defined "clearly and accurately," within the language of section 1681g(a), the Seventh Circuit construed the terms in light of section 1681g(a)(1)'s primary purpose: "to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i['s]" reinvestigation procedures.

133. "The disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file."

134. As alleged above, Trans Union failed to disclose BANA positive payment history reporting to Trans Union stating that Plaintiff's account was "current" with all ongoing monthly payment obligations.

135. Upon information and belief, based upon Trans Union's suppression of furnished information on the face of its consumer disclosures, as a matter of policy, Trans Union does not provide ACDVs to furnishers whose suppressed information is the subject of dispute, thus giving rise to an informational injury to Plaintiff. This injury is a form of actual damage to Plaintiff because it deprived her of the ability to meaningfully dispute inaccurate and incomplete information otherwise reporting in her consumer file at Trans Union.

136. Trans Union's decision to make these inaccurate, incomplete, and misleading disclosures has deprived Plaintiff of information she was entitled to receive under 15 U.S.C. § 1681g(a).  As such, she lost a benefit conferred on her by Congress, which cannot be replaced.

137.    Trans Union's representations to Plaintiff that the BANA account was no longer appearing on her credit report was patently false both as to the initial consumer disclosure and the subsequent notices of results of reinvestigation.  This is a fact based upon a Credit Plus, Inc., consumer report dated November 8, 2017 generated in connection with Plaintiff's effort to secure mortgage lending.  On the face of that consumer report, Trans Union was still reporting the BANA Mortgage, which Trans Union knew was a joint account with her husband.

138.    Plaintiff's efforts to correct Trans Union's patently incorrect and materially misleading reporting were fruitless, resulting in this lawsuit.  Because even after Plaintiff provided Trans Union with BANA's own documents which clearly contradicted Trans Union's own reporting, Trans Union willfully violated its duties under sections 1681i(a).

139.    Trans Union's continued incomplete and inaccurate reporting of Plaintiff's credit history, including the suppression of the Suppressed Positive Data, in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory and punitive damages.

140.    Also as a result of Trans Union's continued incomplete and inaccurate reporting of the Suppressed Positive Data, Plaintiff has suffered actual damages, including without limitation issues related to credit denials, out-of-pocket expenses in challenging Trans Union's wrongful omissions, and damage to Plaintiff's creditworthiness.

141.    By reporting incomplete and inaccurate account information relating to Plaintiff's credit history, including the suppression of positive account history on Plaintiff's BANA's Account after notice and confirmation of its errors, Trans Union failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a).

142.   Plaintiff has been required to retain counsel to prosecute this action based on Trans Union's defective reinvestigation, and is entitled to recover reasonable attorney's fees and costs.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 *ET SEQ*. (FCRA)**

143.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

144.   The foregoing acts and omissions related to Experian, Equifax, and Trans Union constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

145.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Experian, Equifax, and Trans Union.

146.   As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Experian, Equifax, and Trans Union.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: March 29, 2018

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Attorneys for Plaintiff